UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

OMAR TRIPLETT,

                              Plaintiff,

                                                    9:09-CV-1396
v.                                                  (NAM/GHL)

SGT. RENDLE, SGT. R. MYERS,
C.O. D. BARRIERE, C.O. D. BEANE,
C.O. MOAK, C.O. J. VARIN,
SGT. SNOW, C.O. L. BEZIO,
SGT. LECLAIRE,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

OMAR TRIPLETT, 01-A-2100
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                           BRIAN J. O'DONNELL, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Omar Triplett claims that Defendants subjected him to excessive force and unconstitutional

conditions of confinement. (Dkt. No. 56.)[1]  Currently pending before the Court is Defendants'

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 42.)

For the reasons discussed below, I recommend that the Court deny Defendants' motion for

summary judgment.

I.      **FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff alleges that on December 12, 2006, he was showering at Clinton Correctional

Facility. (Dkt. No. 56 ¶¶ 26-27.)  Defendant Correction Officer Barriere came into the shower

cell and began punching and grabbing Plaintiff. *Id*. ¶ 29.  As he was doing so, Defendant

Correction Officer Beane entered to assist Defendant Barriere. *Id*. ¶ 30.  One of them pressed the

emergency button and an extraction team responded. *Id*. ¶¶ 30-31.  This team included

Defendant Correction Officers Bezio and Moak and Defendant Sergeant Rendle. *Id*. ¶ 31.  They

hit and kicked Plaintiff and called him "nigger" while he was being handcuffed. *Id*.

Defendants Moak, Varin, and Rendle escorted Plaintiff in handcuffs to the facility's

hospital. *Id*. ¶ 33.  On the way, Defendant Rendle clubbed Plaintiff's knees and Defendant Moak

hit Plaintiff with a club, punched Plaintiff, and kicked him. *Id*.

Plaintiff was then placed in an observation unit. *Id*. ¶ 34.  The cell was unheated and had

no mattress. *Id*.  The window was opened and Plaintiff could not close it. *Id*.  He asked

Defendant Sergeant Leclaire[2] to close the window and give him a mattress. *Id*.  Defendant

---

[1]      Citations to the complaint refer to the amended complaint, which was filed after
Defendants moved for summary judgment.

[2]      Defendant Leclaire has not been served. (Dkt. No. 67.)  Plaintiff states that he
does "not desire [the Court] to attempt to locate Sgt. Leclair[e].  If he wasn't found in your
attempt, then I'm not trying to pursue him further." (Dkt. No. 69.)  It is therefore recommended
that the Court grant Plaintiff's request to voluntarily dismiss Defendant Leclaire from this action.

Leclaire ignored him.  *Id*.  Plaintiff alleges that this "extreme torture went on for [four] days until Dec. 22 (or 23).  Someone from Mental Health Office came [and] witness[ed] the torture.  She authorized my window to be closed [and] provided [Plaintiff] with a mattress."  *Id*. ¶ 35.

Plaintiff remained in observation until January 4, 2007.[3]  *Id*. ¶ 36.  He was then transferred to the Central New York Psychiatric Center.  *Id*.

On January 11, 2007, Plaintiff wrote to Prisoners Legal Service of New York.  (Dkt. No. 51 at 33.)  He sent a copy of this letter to the Inmate Grievance Resolution Committee ("IGRC") at Clinton Correctional Facility.  *Id*.  In that letter, he complained about the use of force by Defendants Barriere, Beane, Rendle, and Moak.  *Id*.  He sent a similar letter to Deputy Commissioner Lucien Leclaire[4] on the same date.  *Id*. at 36.   On January 19, 2007, Acting DOCCS Commissioner Brian Fischer directed Lester N. Wright to respond to the letters.  *Id*. at 40.  On February 6, 2007, Lester N. Wright directed Mr. Leclaire to respond to the letters.  *Id*. at 41.  An investigation was conducted.  *Id*. at 43-48.

On February 22, 2007, the Inmate Grievance Program ("IGP") Supervisor at Clinton Correctional Facility informed Plaintiff that "[t]here are no grievances on file for you for 2007." *Id*. at 52.

On or about March 4, 2007, Plaintiff was transferred to Elmira Correctional Facility. (Dkt. No. 1 ¶ 36; Dkt. No. 51 at 58.)

On March 13, 2007, the IGP Supervisor at Clinton Correctional Facility informed

---

[3]     Plaintiff was apparently housed in two different observation units during this period: "Unit 14" and "OBS."  (Dkt. No. 43-2 at 2:13-14.)

[4]     Deputy Commissioner Leclaire and Sergeant Leclaire of Clinton Correctional Facility are different people.

Plaintiff again that "[t]here is no record of any grievances on file for you in 2007 at Clinton C.F."
(Dkt. No. 51 at 51.)

In March and April 2007, Plaintiff submitted several more grievances to the IGRC at
Clinton Correctional Facility regarding the December 12, 2006, incident. *Id*. at 53-55.  On
March 24, 2007, Plaintiff wrote to the IGRC stating that he had filed earlier grievances regarding
the incident to which he had not received responses. *Id*. at 56.

On April 4, 2007, Plaintiff wrote to the IGRC at Elmira Correctional Facility to complain
about the December 12, 2006, incident. *Id*. at 61-63.

On April 6, 2007, the IGP Supervisor at Clinton Correctional Facility returned Plaintiff's
complaints to him because "a complaint may only be filed at the facility where an inmate is
housed even if it pertains to another facility." *Id*. at 50.

On April 23, 2007, the IGP Supervisor at Elmira Correctional Facility rejected Plaintiff's
grievance regarding the December 12, 2006, incident. *Id*. at 59.  He stated that the grievance was
not acceptable because it was not filed within twenty-one days of the incident or within forty-five
days of the incident with mitigating circumstances. *Id*.

On May 11, 2007, the IGP Supervisor at Elmira Correctional Facility wrote to Plaintiff.
He stated:

> As I have stated in two previous letters to you your grievance
> regarding a 12/12/06 incident at Clinton C.F. is untimely and will not
> be accepted.  You were housed at Clinton C.F. for twenty-four days
> after the alleged occurrence before being discharged to OMH.  You
> had ample time to file your grievance at that facility.  You were sent
> back to DOCS custody on 3/5/07 to Elmira C.F.  You sent me your
> grievance regarding the 12/12 incident at Clinton C.F. on 4/04/07.
> This is one month after arriving at Elmira C.F.  Directive #4040
> allows 21 days for a grievance to be filed after an alleged occurrence.
> With mitigating circumstances the directive allows a maximum of 45

days from the original date of occurrence for a grievance to be allowed late.  In this case, your mitigating circumstances are not sufficient.  You should have filed this grievance immediately while housed at Clinton C.F.

*Id*. at 58.

On May 14, 2007, Plaintiff wrote to Thomas Eagan, an official with the DOCCS Inmate Grievance Program.  *Id*. at 66-67.  Plaintiff complained about the refusal by IGRC staff at Clinton and Elmira Correctional Facilities to accept his grievances.  *Id*.  He also sent Mr. Eagan grievances complaining about the December 12, 2006, incident.  *Id*. at 68-72.

On July 9, 2007, Karen Bellamy, the Director of the DOCCS Inmate Grievance Program, wrote to Plaintiff.  *Id*. at 65.  She stated that:

Directive #4040 . . . indicates that an inmate must submit a complaint to the clerk within fourteen (14) calendar days of an alleged occurrence.  Exceptions to this time limit may be approved by the IGP Supervisor based on mitigating circumstances.  The facility IGP Supervisor at Elmira Correctional Facility returned your complaints regarding allegations from December 12, 2006 because you did not present sufficient mitigating circumstances to warrant an exception to the time frames stipulated in Directive #4040.  If you disagree with the IGP Supervisor, you can address that determination by filing a grievance.  It is also noted that you attempted to file these grievances by mailing them from Elmira Correctional Facility to the IGP Supervisor at Clinton Correctional Facility, but they were returned.  Be advised that a complaint must be filed at the facility where the inmate is housed even if it pertains to another facility . . . .

*Id*.

Plaintiff filed his original complaint more than two years later, on December 14, 2009.  (Dkt. No. 1.)  Defendants now move for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 42.)  Plaintiff has opposed the motion.  (Dkt. No. 51.)  Defendants did not file a reply.

5

## II.      LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.     ANALYSIS

Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 42.)

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

---

[5]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

6

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In

order to properly exhaust administrative remedies under the PLRA, inmates are required to

complete the administrative review process in accordance with the rules applicable to the

particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In

New York state prisons, the Department of Corrections and Community Supervision ("DOCCS")

has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit.

7, § 701.7 (2010).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following

procedure for the filing of grievances. First, an inmate must file a complaint with the facility's

IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp. Codes R. &

Regs. tit. 7, § 701.5(a) (2010). A representative of the facility's IGRC has sixteen calendar days

from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1). If there is no such

informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt

of the grievance, and issues a written decision within two working days of the conclusion of the

hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within

seven calendar days of receipt of the IGRC's written decision. If the grievance involves an

institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a

written decision within twenty calendar days of receipt of the grievant's appeal.

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision.  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. at (d).

An inmate may seek an extension of the time limits in writing at any of the steps, but such a request must be made within forty-five days of the incident.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010).  If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial.  *Id*.

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81 (2006).

Here, Plaintiff did not complete the grievance process by appealing to CORC.  (Dkt. Nos. 42-4 and 42-5.)  Therefore, he did not exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies.  *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6]

First, "the court must ask whether [the] administrative remedies [not pursued by the

---

[6]    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81.  *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted).

Here, as discussed above, administrative remedies were available to Plaintiff.

Second, if those remedies were available, "the court should . . . inquire as to whether

[some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by

failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the

[prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the

plaintiff's failure to exhaust as a defense." *Id.* (citations omitted).  Here, Defendants have

preserved the defense by raising it in their answer to the complaint.  (Dkt. No. 63 ¶ 26.)

However, there is a triable issue that Defendants are estopped from asserting the defense.

Plaintiff testified at his deposition that he was unable to write while he was in the observation

cells at Clinton Correctional Facility because of his injuries from the alleged use of excessive

force and that, even if he could have written, he did not have a pen or a pencil.[7]  (Dkt. No. 43-2 at

3:2-11.)  Plaintiff remained in observation until January 4, 2007, at which point his twenty-one

day period in which to file a timely grievance had expired.  These facts raise a triable issue

regarding estoppel.  *See Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court

directed to consider whether defendants were estopped from asserting exhaustion defense where

inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another

prison).

Even if Plaintiff had not raised a triable issue of fact at the second part of the *Hemphill*

inquiry, Defendants would not be entitled to summary judgment.  The third part of the *Hemphill*

---

[7]        Plaintiff admitted that he did not ask for paper or a pen, but testified that "I was
injured.  I couldn't use it."  (Dkt. No. 43-2 at 3:12-14.)

inquiry requires the court to "consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004). Here, as set forth in Section I of this Report-Recommendation, Plaintiff began attempting to file grievances regarding the December 12, 2006, incident within one week of being transferred to a new facility. He initially filed these grievances with Clinton Correctional Facility and, upon being informed that he needed to file them at his current facility, began directing them to officials at Elmira Correctional Facility. One of his complaints resulted in an investigation being conducted, but Plaintiff was never informed of the results of that investigation. In fact, the IGP Supervisor at Clinton Correctional Facility informed Plaintiff twice that there were no grievances on file for him in 2007. (Dkt. No. 51 at 51-52.) The record shows that Plaintiff successfully appealed grievances to CORC both before and after the incident at issue here (Dkt. No. 42-5 at 1), a fact which Defendants could argue indicates that Plaintiff knew how to use the process and thus should have done so properly. However, a trier of fact could find that the same fact indicates that Plaintiff was justifiably confused by his transfers and the responses to his inquiries and could not determine how to grieve in the normally required way. Therefore, I recommend that the Court deny Defendants' motion for summary judgment.

    **ACCORDINGLY**, it is

    **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 42) be **<u>DENIED</u>**; and it is further

**RECOMMENDED** that Plaintiff's request to voluntarily dismiss Defendant Leclaire (Dkt. No. 69) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: February 9, 2012
      Syracuse, New York

George H. Lowe
United States Magistrate Judge